UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
STEVEN MANNEY and JOSEPH LEONARDO,
as assignees of Bassline Digital Inc.,

OPINION AND ORDER
10 CV 4493 (SJF)(WDW)

Plaintiffs,

- against-

INTERGROOVE TONTRAGER VERTRIEBS GMBH,
INTERGROOVE U.S. INC., PETER MATTHIAS,
and EVA MATTHIAS,

Defendants.
--------------------------------------------------------------------X
FEUERSTEIN, J.

On or about July 12, 2010, plaintiffs Steven Manney and Joseph Leonardo (collectively,

"plaintiffs"), as assignees of Bassline Digital Inc. ("Bassline"), commenced an action in the

Supreme Court of the State of New York, County of Nassau ("the state court") against defendant

Intergroove Tontrager Vertriebs GMBH[1] ("Intergroove Germany"), defendants Peter Matthias and

Eva Matthias (collectively, "the Matthias defendants"), and defendant Intergroove U.S. Inc.

("Intergroove U.S."), alleging claims for breach of contract; work, labor and services rendered;

implied contract; unjust enrichment; and fraud in the inducement. On October 1, 2010, Intergroove

Germany filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b) and 1446, removing the

action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332.

Thereafter, plaintiffs timely moved pursuant to 28 U.S.C. § 1447(c) to remand this matter to the

state court; the Matthias defendants moved to dismiss the action against them, inter alia, based

upon plaintiffs' lack of legal capacity to sue or, in the alternative, for failure to state a cause of

--------------------------------------------------

[1] Intergroove Tontrager Vertriebs GmbH has since changed its name to Intergroove Media GmbH.

1

action; and defendant Intergroove Germany separately moved to dismiss this action, *inter alia*, based upon plaintiffs' lack of legal capacity to sue or, in the alternative, upon the ground of *forum non conveniens*. For the reasons stated herein, Intergroove Germany's and the Matthias defendants' motions are granted in part and denied in part as moot, and plaintiffs' motion is denied as moot.

I.      Background

      A.      Factual Allegations

            1.      The Parties

Plaintiffs are the principal officers of Bassline and commenced this suit in their capacity as the assignees of Bassline. (Complaint [Compl.], ¶ 1). Bassline was incorporated in the State of Delaware on January 3, 2006 and has its principal place of business at 53 East Merrick Road, Freeport, New York. (Compl., ¶ 1; Declaration of William Archer dated October 29, 2010 ["10/29/10 Archer Decl."], Ex. 3). However, Bassline "is no longer in existence and good standing under the laws of the State of Delaware having become forfeited the thirteenth day of June, A.D. 2007, for failure to obtain and designate a registered agent." (10/29/10 Archer Decl., Ex. 3). Moreover, at all relevant times, Bassline was never authorized to do business in the State of New York. (10/29/10 Archer Decl., Ex. 4).

Intergroove Germany is a privately-held German limited liability company with its principal place of business in Offenbach am Main, Germany. (Notice of Removal [Rem.], ¶ 3; Declaration of Ralf Reichert dated November 1, 2010 ["11/1/10 Reichert Decl.], ¶ 1). Intergroove Germany is engaged in the business of distributing sound and audiovisual recordings. (11/1/10 Decl., ¶ 1). Ralf Reichert ["Reichert"] has been the managing director of Intergroove Germany

since 1996. (11/1/10 Reichert Decl., ¶ 1).

The Matthias defendants are German citizens residing in Kembs, France. (Rem., ¶ 5; Declaration of Peter Matthias dated November 1, 2010 [11/1/10 Peter Decl.], ¶ 2; Declaration of Eva Matthias dated November 1, 2010 [11/1/10 Eva Decl.], ¶ 2). Plaintiffs allege, upon information and belief, that the Matthias defendants "are individuals who acted as private entrepreneurs and agents and intermediaries of Intergroove [Germany]." (Compl., ¶ 9).

In 1995, UCMG GmbH & Co. KG[2] ("USMG") was formed and created a holding company, UCMG USA, in Delaware, and a subsidiary company, UCMG-NY, d/b/a "Intergroove U.S.," in New York. (Declaration of Joachim Keil dated November 1, 2010 [11/1/10 Keil Decl.], ¶¶ 1-2). Joachim Keil ("Keil") was the managing director and majority shareholder of UCMG at that time. (11/1/10 Keil Decl., ¶ 1). On or about December 10, 1996, UCMG-NY formed Intergroove U.S., Inc. ("Intergroove U.S."), as a wholly-owned subsidiary of UCMG-NY having two hundred (200) shares of common stock. (11/1/10 Keil Decl., ¶ 3). Intergroove U.S. was incorporated in the State of New York on December 16, 1996 and the First Deputy Secretary of State of the State of New York certified on October 26, 2010 that it is still an existing corporation. (Archer Decl., Ex. 8). However, Peter Brooks, a messenger sent to the address designated as Intergroove U.S.'s office, averred that he was told by an individual at the premises that there was no company by the name of "Intergroove U.S." at that address, rather a company named "K2" occupied those premises. (Affidavit of Peter Brooks dated October 15, 2010 ["Brooks Aff."], ¶¶ 1-2). In addition, Brooks averred that he did not see any sign, or other indication, that any company by the name of "Intergroove U.S." was using that address, but he did see a sign indicating that

---

[2] According to Keil, a "GmbH & Co. KG" is equivalent to a limited liability partnership where the limited partner is the managing company. (Keil Decl., ¶ 1).

"K2" was using that address. (Id. at ¶ 2).

On or about December 23, 1996, Intergroove Germany purchased from Intergroove U.S. thirty (30) of the two hundred (200) shares of stock in Intergroove U.S. (11/1/10 Keil Decl., ¶ 4; 11/1/10 Reichert Decl., ¶ 2; Declaration of William Archer ["Archer Decl."], Exs. 5 and 6). On or about August 27, 2002, Intergroove Germany sold those thirty (30) shares to UCMG Europe AG ("UCMG Europe"). (11/1/10 Keil Decl., ¶ 4; 11/1/10 Reichert Decl., ¶ 3; Archer Decl., Ex. 7). At that time, Keil was the CEO of UCMG Europe. (11/1/10 Keil Decl., ¶ 1). Neither Intergroove Germany nor Reichert ever owned any interest in UCMG Europe, (11/1/10 Reichert Decl., ¶ 4), nor have they had any ownership interest in Intergroove U.S. since August 27, 2002. (11/1/10 Reichert Decl., ¶ 4). In or about March 2003, UCMG Europe filed insolvency proceedings in Germany. (11/1/10 Keil Decl., ¶ 5). There has been no connection at all between Intergroove Germany and Intergroove U.S. since 2002. (11/1/10 Keil Decl., at 2) Plaintiffs allege, however, that "[u]pon information and belief [Intergroove] U.S. is a wholly owned subsidiary of Intergroove [Germany] and acts as a mere instrumentality of Intergroove [Germany] and does business as the United States arm of Intergroove [Germany]." (Compl., ¶ 8).


2.     The Parties' Business Relationship

Plaintiffs allege that they have known the Matthias defendants "on [a] private level" for over twenty (20) years. (Compl., ¶ 10). Between approximately June 28, 2008 through July 9, 2008, the Matthias defendants traveled to New York and met with plaintiffs. (Compl., ¶ 10; 11/1/10 Peter Decl., ¶ 4). Plaintiffs allege that during that time, it was agreed that Peter Matthias ("Peter") would be the plaintiffs' exclusive agent or representative in Europe to solicit business for plaintiffs' video production service. (Compl., ¶ 10; Affidavit of Joseph Leonardo dated October

4

21, 2010 ["10/21/10 Leonardo Aff."], ¶ 11).

In September 2008, the Matthias defendants, allegedly on plaintiffs' behalf, negotiated a video production deal with Intergroove Germany in Germany. (Compl., ¶ 10). According to plaintiffs, pursuant to that deal, the Matthias defendants were "to share with Plaintiffs in the revenue generated from Intergroove [Germany]." (Compl., ¶ 10).

In November 2008, plaintiffs, Reichert and Peter met in Frankfurt, Germany to negotiate an agreement for Intergroove Germany to manufacture and distribute sound and/or audiovisual recordings to be supplied by Bassline. (Compl., ¶¶ 2, 11; Reichert Decl., ¶ 5). According to Reichert, he "specifically told Plaintiffs in that meeting that [Intergroove] U.S. was not an Intergroove [Germany] subsidiary and expressed to them [his] understanding that [Intergroove] U.S. no longer existed." (Reichert Decl., ¶ 5).

Plaintiffs allege that in or about December 2008, after they were contacted by the Matthias defendants, they entered into an oral contract, pursuant to which Bassline agreed to deliver approximately twenty-five (25) to thirty (30) video productions to Intergroove Germany in exchange for Intergroove Germany's payment to Bassline of an hourly rate of six hundred fifty dollars ($650.00) for plaintiffs' services. (Compl., ¶ 12). Reichert denies that Intergroove Germany ever agreed to pay any hourly fee to plaintiffs. (Reichert Decl., ¶ 16). On December 30, 2008, Reichert sent an e-mail to plaintiffs setting forth six (6) basic terms of an agreement pursuant to which Intergroove Germany would distribute sound recordings supplied by Bassline under its "doing business as" name: "Bassline/TV Rock." (Reichert Decl., ¶ 6; Archer Decl., Ex. 9). In an e-mail dated January 5, 2009, plaintiffs agreed to the terms proposed by Intergroove Germany, but indicated that the "customer and the addressee of the invoices" under the contract should be Millennium Productions, Ltd. ("Millennium"), rather than Bassline/TV Rock. (Reichert Decl., ¶ 7;

Archer Decl., Ex. 9).

On or about February 5, 2009, Intergroove Germany entered into a formal agreement with Millennium ("the distribution agreement"), pursuant to which Intergroove Germany agreed to distribute recordings supplied by Millennium under the brand name "TV Rock" and delivered to Intergroove Germany's warehouse in Offenbach, Germany. (Reichert Decl., ¶ 8; Archer Decl., Ex. 11). At all relevant times, Peter was the owner of Millennium and a signatory on the distribution agreement. (Affidavit of Joseph Leonardo dated November 4, 2010 ["11/4/10 Leonardo Aff."], ¶ 11). According to Leonardo, plaintiffs were "led to believe that [they] had a partial ownership in Millennium," but Peter never issued any stock to them and, in fact, they "had no interest in [Millennium]." (11/4/10 Leonardo Aff., ¶¶ 12-13).

Plaintiffs allege that between approximately January 2009 and July 2009, they delivered twenty-seven (27) video productions directly to Intergroove Germany. (Compl., ¶ 13). On or about February 1, 2009, plaintiffs sent Intergroove Germany an invoice in the amount of one hundred eighty thousand seven hundred dollars ($180,700.00) for "its services." (Compl., ¶ 14). On or about March 1, 2009, plaintiffs sent Intergroove Germany an invoice in the amount of one hundred ninety-one thousand four hundred twenty-five dollars ($191,425.00) for "its services." (Compl., ¶ 14). On or about March 11, 2009, Intergroove Germany made an initial payment by online money transfer to plaintiffs in the amount of nine thousand four hundred fourteen dollars and seventy-five cents ($9,414.75). (Compl., ¶ 15; 10/21/10 Leonardo Aff., ¶ 39; 11/4/10 Leonardo Aff., ¶ 17).

On or about April 1, 2009, plaintiffs sent Intergroove Germany an invoice in the amount of sixty-six thousand nine hundred fifty dollars ($66,950.00) for "its services." (Compl., ¶ 14). On or about May 1, 2009, plaintiffs sent Intergroove Germany an invoice in the amount of one

hundred fifty-one thousand four hundred fifty dollars ($151,450.00) for "its services." (Compl., ¶ 14). On or about June 1, 2009, plaintiffs sent Intergroove Germany an invoice in the amount of one hundred ninety-one thousand one hundred dollars ($191,100.00) for "its services." (Compl., ¶ 14). On or about June 16, 2009, Intergroove Germany made a payment by online money transfer to plaintiffs' account in the amount of seven thousand six hundred seventy-five dollars and twenty cents ($7,675.20). (Compl., ¶ 16; 10/21/10 Leonardo Aff., ¶ 48; 11/4/10 Leonardo Aff., ¶ 27).

In June 2009, plaintiffs again traveled to Germany and met with Reichert and Peter to demand payment from Intergroove Germany on the balance due, (Compl., ¶¶ 19-20), and to discuss amending the distribution agreement, (Reichert Decl., ¶ 11), to, *inter alia*, allow plaintiffs "to be part of [the Matthias defendants'] existing contract with Intergroove [Germany]."[3] (10/21/10 Leonardo Aff., ¶ 53). Plaintiffs allege that Intergroove Germany promised to make payment "and stated that they [sic] had a subsidiary corporation which was a guarantee that they would make payments. The subsidiary corporation being the defendant [Intergroove] US, at 622 Broadway, New York, NY 10012." (Compl., ¶ 21). According to plaintiffs, at the time that Intergroove Germany made that representation, Intergroove U.S. "had already been bought by Under Cover Music USA th[r]ough a newly formed company called Fine Audio Distribution and [Intergroove] US was subsequently renamed Fine Audio Distribution US. All belong to UCMG [] * * *." (Compl., ¶ 21). Reichert denies making any such representation or ever telling plaintiffs that Intergroove U.S. was a subsidiary of Intergroove Germany. (Reichert Decl., ¶ 12).

Following the June 2009 meeting, plaintiffs e-mailed Reichert a proposed addendum to the distribution agreement dated June 30, 2009, pursuant to which "TV Rock International" was to be

---

[3] Presumably, the distribution agreement between Intergroove Germany and Millennium.

7

added as a party-in-interest and plaintiffs requested "recoupable advance[s] of 3,500 euros 'per new/first release title.'" (Reichert Decl., ¶ 11; Archer Decl., Ex. 12). In an e-mail to Intergroove Germany on July 17, 2009, plaintiffs stated that "Peter has refused to sign off on the contract addendum that was discussed in Frankfurt," but since plaintiffs and Intergroove Germany had signed the addendum, they deemed the addendum to have been "agreed upon, regardless of Peter's signature or not." (Reichert Decl., ¶ 13).

Plaintiffs allege that "[o]n or about July 6, 2009, [they] made an adjustment to the amount of $433.05 to Intergroove [Germany]." (Compl., ¶ 17). Accordingly, plaintiffs contend that there is a balance due and owing from Intergroove Germany in the amount of seven hundred sixty-four thousand one hundred two dollars ($764,102.00). (Compl., ¶ 18).

According to Reichert, pursuant to the distribution agreement, plaintiffs supplied nineteen (19) purportedly "master recordings" to Intergroove Germany, from which Intergroove Germany manufactured physical units which it then distributed. (Reichert Decl., ¶ 9). Reichert maintains that Intergroove Germany provided monthly statements to Millennium and made payments to Bassline's account, as instructed by plaintiffs, of "some amounts on their expected proceeds after deduction of the distribution fee and other costs permitted by the Distribution Agreement plus several shipments of finished products." (Reichert Decl., ¶ 9). According to Reichert, "[t]he amounts paid by Intergroove [Germany] to Plaintiffs were advance payments of monies that were anticipated to be payable to Millennium, which advance payments were requested by Plaintiffs and made as an accommodation to them by Intergroove [Germany] and deducted from the corresponding statements, thereby being paid by Intergroove [Germany] on behalf of Millennium directly to the Plaintiffs." (Reichert Decl., ¶ 9).

Reichert further maintains that eight (8) of the nineteen (19) recordings that Plaintiffs

supplied to Intergroove Germany for distribution had to be withdrawn from distribution because third parties had objected on the basis that "necessary rights had not been obtained and Plaintiffs were never able to demonstrate that they had obtained the proper rights to exploit those recordings." (Reichert Decl., ¶ 10). According to Leonardo, it was Peter's, not their, responsibility to obtain the necessary rights. (11/4/10 Leonardo Aff., ¶¶ 29-30).

Plaintiffs allege that Intergroove Germany and the Matthias defendant have since "made a new deal to offer the same services offered by [them] through a newly Incorporated English Limited Liability Company owned by [the Matthias defendants]." According to plaintiffs, "[u]sing the exact, original, unique creative Video production style and Intellectual Ideas acquired through the privileged relationship with Plaintiffs, [the Matthias defendants] produced videos of the [sic] almost the same quality as the Plaintiffs and in doing so eliminating [sic] the Plaintiffs from any further business involvement with the Defendants." (Compl., ¶ 22).

B.    Procedural History

On January 11, 2010, Bassline commenced an action in this Court against Intergroove Germany, alleging claims for breach of contract; goods and services sold and delivered; implied contract; unjust enrichment; and promissory estoppel, which was assigned to the Honorable Arthur D. Spatt under docket number 10-cv-0097. On March 26, 2010, Senior Judge Spatt entered a default judgment against Intergroove Germany based upon its failure to answer the complaint or to otherwise appear in the action, and referred the matter to United States Magistrate Judge E. Thomas Boyle to hear and determine the amount of damages to be awarded to Bassline. Magistrate Judge Boyle issued a report and recommendation dated July 29, 2010 ("the Report"), recommending that the default judgment against Intergroove Germany be vacated for lack of

9

personal jurisdiction since Intergroove Germany had never been served with process in that action. By memorandum of decision and order dated October 7, 2010, Senior Judge Spatt adopted the Report in its entirety; vacated the default judgment against Intergroove Germany; and dismissed Bassline's complaint against Intergroove Germany without prejudice based upon Bassline's failure to effect proper service upon it. Judgment was entered against Bassline in that action on October 13, 2010.

On or about July 12, 2010, plaintiffs, in their capacity as "assignees of Bassline Digital Inc.," commenced an action in state court, alleging the same claims against Intergroove Germany as Bassline had asserted in the previous action before Senior Judge Spatt, with the exception of their claim based upon promissory estoppel, as well as an additional claim of fraud against Intergroove Germany, the Matthias defendants and Intergroove U.S. Specifically, plaintiffs assert claims for breach of contract (first cause of action); work, labor and services rendered (second cause of action); implied contract (third cause of action); and unjust enrichment (fourth cause of action against Intergroove Germany and the Matthias defendants; as well as a claim for fraud in the inducement against all of the defendants (fifth cause of action).[4] With respect to their claim for fraud in the inducement, plaintiffs allege: (1) that all of the defendants "made materially false and misleading representations to the Plaintiffs by failing to advise them that they had no intention of paying any further money to the Plaintiffs[;]" (2) that plaintiffs "were induced by and relied on" the representations of Intergroove Germany and the Matthias defendants "that payment would be made and that as insurance the defendants had a New York Corporation that would insure said payment, and Plaintiffs did not know that the Defendant Intergroove [Germany] had no intention of making

---

[4] Plaintiffs assert their second, third and fourth causes of action "in the alternative to the other causes of action contained within th[e] complaint." (Compl., ¶¶ 29, 34, 42).

payments[;]" (3) that the Matthias defendants "had made arrangements with another company to do work for Intergroove [Germany] with Intergroove[] [Germany's] approval and thus eliminating [sic] the Plaintiffs from participation of the proceeds[;]" and (4) that the Matthias defendants "received the proceeds from Intergroove [Germany] without remitting any portion due to the Plaintiffs and * * * [are] wrongfully in possession of the Plaintiffs [sic] money." (Compl., ¶¶ 50-55). The summons and complaint was served on Intergroove Germany on September 27, 2010. (Reichert Decl., ¶ 18).

On October 1, 2010, Intergroove Germany filed a notice of removal pursuant to 28 U.S.C. §§ 1441(b) and 1446, removing the action to this Court pursuant to this Court's diversity jurisdiction under 28 U.S.C. § 1332. In its notice of removal, Intergroove Germany contends, *inter alia*, that Intergroove U.S. "was fraudulently joined to prevent diversity and there is no possibility, based on the pleadings, that Plaintiffs can state a cause of action against [Intergroove] U.S. in state court," (Rem., ¶6), and that "Plaintiffs' Complaint fails to allege factual foundations to support its fraud cause of action against [Intergroove] U.S. and the vague and conclusory allegations do not provide any possibility of success against [Intergroove] U.S. under state law," (Rem., ¶ 11). The Matthias defendants do not oppose the removal. (Rem., Exs. A and B).

Thereafter, plaintiffs timely moved pursuant to 28 U.S.C. § 1447(c) to remand this matter to the state court; and Intergroove Germany and the Matthias defendants separately moved to dismiss the action against them.


II.    DISCUSSION

    A.    Capacity to Maintain Action


11

Although Bassline was incorporated in the State of Delaware on January 3, 2006, it has not been an existing corporation in good standing in that state since June 13, 2007, having forfeited its charter pursuant to 8 Del. C. § 136(b). Moreover, the First Deputy Secretary of State for the State of New York certified on October 26, 2010 that Bassline never filed an application for authority to do business in the State of New York. (Archer Decl., Ex. 2).

Intergroove Germany maintains that since Bassline was never authorized to do business in the State of New York, New York law prohibits plaintiffs, as assignees of that unauthorized business, from maintaining this action.

In opposition, plaintiffs submit an Application for Authority of Bassline to do business in New York, which was filed with the New York State Department of Taxation and Finance ("NYSDTF") on June 29, 2010. (11/4/10 Leonardo Aff., Ex. A). However, no Certificate of Existence from the Secretary of State of the State of Delaware is attached to that application, as required by New York Business Corporations Law § 1304(b), (see 11/4/10 Leonardo Aff., Ex. A, at 2-3)[5], and Intergroove Germany has submitted a certificate from the First Deputy Secretary of State for the State of New York dated almost four (4) months after the application was filed with the NYSDTF certifying that Bassline had not, as of that date, ever filed an application with the New York State Department of State for authority to do business in the State of New York. (Archer Decl., Ex. 2).[6] Plaintiffs have failed to submit any evidence to rebut Intergroove

---

[5] Nor is there evidence of the State Tax Commission's consent to the application, as required by New York Business Corporations Law § 1304(a)(8), or that the mandatory filing fee was paid.

[6] This Court's search of the records of the Delaware Department of State revealed that Bassline is still designated as having a "resigned agent account," and, thus, has not rectified the reason for the forfeiture of its charter.

Germany's showing that Bassline is no longer an existing corporation in good standing in the State of Delaware or demonstrating that it has revived its existence in the state of its incorporation. Having forfeited its charter, and failed to revive itself as an existing corporation in good standing in the state of its incorporation,[7] Bassline lost the capacity to sue and be sued. See, e.g. Jay Dees Inc. v. Defense Technology Systems, Inc., No. 05 Civ. 6954, 2008 WL 4501652, at * 6 (S.D.N.Y. Sept. 30, 2008), aff'd in part and vacated in part on other grounds by Scotto v. Brady, 410 Fed. Appx. 355 (2d Cir. Dec. 2, 2010); Wax v. Riverview Cemetery Co., 2 Terry 424, 41 Del. 424, 24 A.2d 431, 435 (Del. 1942).

Under New York law, "[a] foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, * * *, as well as penalties and interest charges related thereto, accrued against the corporation. This prohibition shall apply to any successor in interest of such foreign corporation." N.Y. Bus. Corp. L. § 1312(a). Section 1312 "does not raise a jurisdictional bar. * * * Instead, B.C.L. § 1312 affects the legal capacity of a foreign corporation doing business in New York without authorization to maintain an action in New York courts." Netherlands Shipmortgage Corp., Ltd. v. Madias, 717 F.2d 731, 735 *2d Cir. 1983) (citations omitted). When jurisdiction rests on diversity, Section 1312 "precludes the

---

[7] Although Delaware law, which is applicable to this issue as the law of the state of Bassline's incorporation, provides for the continuation of corporate existence for a period of three (3) years from the expiration or dissolution of a corporation, "or for such longer period as the Court of Chancery shall in its discretion direct," in order to, *inter alia*, prosecute or defend suits by or against them, 8 Dec. C. § 278, this action was commenced after the expiration of that three (3) year period, and there is no indication that any longer period had been directed by the Court of Chancery.

maintaining of an action by an unauthorized foreign corporation not only in the state courts of New York but also in the federal courts located in that state." Madias, 717 F.2d at 735. The party relying upon Section 1312's bar bears the burden of proving that the corporation's business activities in New York were "so systematic and regular as to manifest continuity of activity in the jurisdiction." S&T Bank v. Spectrum Cabinet Sales, Inc., 247 A.D.2d 373, 373, 668 N.Y.S.2d 641 (2d Dept. 1998) (quotations and citation omitted).

"[N]o precise measure of the nature or extent of [a foreign corporation's] activities [is] determinative of whether a foreign corporation is doing business in New York and each case must be decided on its own facts * * *." Madias, 717 F.2d at 735; see also Alicanto, S.A. v. Woolverton, 129 A.D.2d 601, 602, 514 N.Y.S.2d 96 (2d Dept. 1987). "[N]ot all business activity engaged in by a foreign corporation constitutes doing business in New York." Madias, 717 F.2d at 735-36. In order for a foreign corporation to be doing business in New York for purposes of Section 1312, "the intrastate activity of a foreign corporation [must] be permanent, continuous, and regular * * *." Id. at 736. An inference that a foreign corporation is doing business in New York is warranted "only where there is a showing either of some ongoing intrastate business activity or the establishment of an ongoing business practice." Id. "[A] temporary or an insubstantial business presence will not warrant an inference that a foreign corporation is doing business in New York." Id. at 738. "[I]n the absence of evidence of ongoing intrastate business activity, the inference that a foreign corporation is doing business in New York must be based on evidence of substantial and permanent or continuous business activity in the state, i.e., evidence that the corporation has localized some portion of its business activity in New York." Id. at 739.

14

Plaintiffs allege in their complaint that Bassline's principal place of business is in

Freeport, New York. (Compl., ¶ 1). Moreover, by filing an Application for Authority of

Bassline to do business in New York with the NYSDTF, instead of directly with the New York

State Department of State, and indicating thereupon that the consent of the State Tax

Commission was attached, plaintiffs implicitly admit that Bassline conducted business in New

York prior to obtaining authorization to do so. See N.Y. Bus. Corp. Law § 1304(a)(8).

Accordingly, under the circumstances of this case, Bassline was doing business in New York for

purposes of Section 1312 without the requisite authorization.

Even assuming, *arguendo*, that plaintiffs' Application for Authority of Bassline to do

business in New York was accepted for filing and granted by the New York State Department of

State, it would not affect their legal capacity, or lack thereof, to sue. Pursuant to New York

Business Corporations Law § 1305, the authority to do business in this State granted to a foreign

corporation "shall continue so long as [the corporation] retains its authority to do such business

in the jurisdiction of its incorporation * * *." Since, as set forth above, Bassline has no authority

to do business in Delaware, the state of its incorporation, as a result of the forfeiture of its charter

in 2007, Bassline does not have any authority to do business in New York as a matter of law.

Therefore, neither Bassline, nor plaintiffs, who are suing solely in their capacity as Bassline's

assignees or successors in interest[8], can maintain this action under Section 1312(a). Thus, the

branches of Intergroove Germany's and the Matthias defendants' motions seeking dismissal of

this action based upon plaintiffs' lack of legal capacity to sue are granted, and the motions are

---

[8] Although plaintiffs argue that they, as individuals, and not Bassline, commenced this action, they specifically commenced this action as "assignees" of Bassline. Accordingly, Bassline had no right to commence this action which could have been assigned to plaintiffs.

otherwise denied as moot. Plaintiffs' motion for a remand is likewise denied as moot.

III.  Conclusion

For the reasons stated herein, the branches of Intergroove Germany's and the Matthias defendants' motions seeking dismissal of this action based upon plaintiffs' lack of legal capacity to sue are granted, the action is dismissed in its entirety without prejudice and the motions are otherwise denied as moot. Plaintiffs' motion for a remand is likewise denied as moot. The Clerk of the Court is directed to enter judgment in favor of defendants, to close this case and to serve notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* plaintiffs at their last known address. Fed. R. Civ. P. 5(b)(2)(C).

SO ORDERED.

/S/ Sandra J. Feuerstein

———————————————
SANDRA J. FEUERSTEIN
United States District Judge

Dated: November 30, 2011
       Central Islip, N.Y.